**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| JOSEPH SANGENITO, ZHARGAL DAMPILON, RICHARD GRAD, KEVIN FINLEY, THOMAS KAVANAUGH, SIR ARNOLD GONZALEZ, JOSEPH MANEMANN, DAVID GOODELL, NANCY LITAKER RIDGEWAY, AMARJEET SIDHU, and JAMES ROBBINS, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>BMW OF NORTH AMERICA, LLC, and BAYERISCHE MOTOREN WERKE AG,<br><br>Defendants. | Civil Action No. 25-17858 (SDW) (AME)<br><br>**OPINION**<br><br>October 7, 2026 |

**WIGENTON**, District Judge.

Before this Court is Defendant BMW of North America, LLC's ("Defendant" or "BMW NA") Motion to Dismiss (D.E. 15 ("Mot.")) Plaintiffs' First Amended Complaint pursuant to Federal Rules of Civil Procedure ("Rules") 12(b)(6) and 9(b).[1] Jurisdiction is proper pursuant to 28 U.S.C. § 1332(d). Venue is proper pursuant to 28 U.S.C. § 1391. This opinion is issued without oral argument pursuant to Rule 78 and Local Civil Rule 78.1. For the reasons stated herein, Defendant BMW NA's Motion to Dismiss is **GRANTED WITHOUT PREJUDICE**.

[1] Citations to "D.E." refer to docket entries in the Court's Electronic Case Filing System for this matter and any internal citations contained therein, unless otherwise indicated.

# I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

## A. Factual Background

Plaintiffs Joseph Sangenito, Zhargal Dampilon, Richard Grad, Kevin Finley, Thomas Kavanaugh, Sir Arnold Gonzalez, Joseph Manemann, David Goodell, Nancy Litaker Ridgeway, Amarjeet Sidhu, and James Robbins, individually and on behalf of others similarly situated, bring this putative class action over BMW NA's transfer case defect.

Defendant BMW NA markets, warrants, distributes, sells, leases, and services automobiles throughout the United States. (D.E. 3 ("AC") ¶ 136.) At issue in this case is a class of purchased or leased vehicles containing a piece of equipment known as the xDrive transfer case. (*Id.* ¶ 2.)[2] The transfer case is a transmission component comprising the drivetrain, which transfers power from the transmission of the vehicle to the driven axles. (*Id.* ¶¶ 152–54.)

Plaintiffs purchased or leased various vehicles, all of which are 2019–2022 BMW X5 models. (*Id.* ¶¶ 21, 34, 44, 53, 63, 73, 82, 91, 101, 110, 119.) Plaintiff Joseph Sangenito purchased his 2020 BMW X5 in New Jersey, and the other named Plaintiffs purchased their BMW X5 models in California, Ohio, Illinois, Iowa, Virginia, Georgia, North Carolina, Maryland, or Washington. (*Id.* ¶¶ 21, 34, 44, 53, 63, 73, 82, 91, 101, 110, 119.)

Plaintiffs allege their vehicles have a defect causing the clutch system to "improperly transmit torque between the front and rear wheels" (hereinafter, the "Defect"). (*Id.* ¶¶ 1, 4.) The consequence of the Defect, Plaintiffs assert, is that individuals in the vehicles experience jerking

---

[2] The specific vehicle models identified in the Amended Complaint are the 2019–2025 G01 (X3 Sports Activity Vehicle), G02 (X4 Sports Activity Coupe), G05 (X5 Sports Activity Vehicle), G06 (X6 Sports Activity Coupe), G07 (X7 Sports Activity Vehicle), G12 (7 Series Sedan), G14 (8 Series Convertible), G15 (8 Series Coupe), G16 (8 Series Gran Coupe), G20 (3 Series Sedan), G22 (4 Series Coupe), G23 (4 Series Convertible), G26 (4 Series Gran Coupe), G30 (5 Series Sedan), G32 (640i xDrive Gran Turismo), G42 (2 Series Coupe), G45 (X3 Sports Activity Vehicle), G60 (5 Series Sedan), and G70 (7 Series Sedan). (AC ¶ 2.)

or shuddering while the vehicle is in operation, including when the driver shifts gears, makes turns, or drives at low speeds. (*Id.* ¶ 4.) Plaintiffs state that in response, Defendant directs customers to replace the transfer fluid or the transfer case itself. (*Id.* ¶¶ 4–6.) The cost of a transfer fluid replacement is between $250 and $1,500, and the cost of a transfer case replacement is between $7,000 and $13,000. (*Id.* ¶¶ 162, 164.) Plaintiffs further allege that if Defendant had disclosed the truth about the Defect, they either would not have bought their vehicle or would have paid less money for it. (*Id.* ¶ 197(f).)

Plaintiffs claim Defendant had knowledge of the Defect based on: the "process of designing, manufacturing, engineering, and testing" the identified vehicles, (*id.* ¶¶ 166–69); complaints made to the National Highway Traffic Safety Administration ("NHTSA"), to BMW NA by class members, or on public online forums, (*id.* ¶¶ 170–74, 183–85); requests to replace vehicle transfer cases, (*id.* ¶¶ 180–82); and BMW NA's service industry bulletin, (*id.* ¶¶ 175–79).

Plaintiffs' vehicles each come with a four-year, 50,000-mile express warranty, whichever occurs first to "either repair or replace the defective part(s)" (hereinafter, the "Limited Warranty"). (*Id.* ¶ 225; D.E. 15-4, Ex. A at 6, D.E. 15-5, Ex. B at 6, D.E. 15-6, Ex. C at 6; *see* D.E. 15-7, Ex. D at 2.)[3] Plaintiffs seek to hold Defendant liable for the Defect, which they claim was present

---

[3] "[W]hen deciding a motion to dismiss, a court may look beyond the pleadings" and may consider those documents "integral to or explicitly relied upon in the complaint" or any "undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document." *Hutchins by Tainsh v. Teamsters W. Region & Loc. 177 Healthcare Plan*, No. 22-4583, 2023 WL 2859803, at *2 (D.N.J. Apr. 10, 2023) (quoting *Pinkney v. Meadville, Pa.*, No. 21-1051, 2022 WL 1616972, at *2 (3d Cir. 2022)). Plaintiffs do not oppose BMW's Request for Judicial Notice in their Opposition Brief. (D.E. 15-3.) Thus, Exhibits A through D, found at D.E. 15-4, Ex. A, D.E. 15-5, Ex. B, D.E. 15-6, Ex. C, and D.E. 15-7, Ex. D, have been considered.

when the identified vehicles were produced and during the applicable warranty period. (AC ¶ 222.)

**B. Procedural History**

Plaintiffs initiated this class action lawsuit on November 24, 2025.[4] (D.E. 1.) Plaintiffs amended their complaint approximately one month later. (D.E. 3.)

The Amended Complaint is the operative pleading and asserts the following causes of action: breach of express warranty pursuant to N.J. Stat. Ann. § 12A:2-313 (Count I); breach of implied warranty pursuant to N.J. Stat. Ann. § 12A:2-314 (Count II); violation of the New Jersey Consumer Fraud Act (the "NJCFA"), N.J. Stat. Ann. §§ 56:8-1, *et seq.* (Count III); fraud by concealment and/or nondisclosure (Count IV); unjust enrichment (Count V); violation of the California Consumers Legal Remedies Act, Cal. Civ. Code §§ 1750, *et seq.* (Count VI); violation of the California Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200, *et seq.* (Count VII); violation of the California False Advertising Law, Cal. Bus. & Prof. Code §§ 17500, *et seq.* (Count VIII); breach of express and implied warranty in violation of the Song-Beverly Consumer Warranty Act, Cal. Civ. Code §§ 1790, *et seq.* (Counts IX and X); violation of the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 Ill. Comp. Stat. Ann. §§ 505/1, *et seq.* (Count XI); violation of the Illinois Uniform Deceptive Trade Practices Act, 815 Ill. Comp. Stat. Ann. §§ 505/10, *et seq.* (Count XII); violation of the Ohio Consumer Sales Practices Act, Ohio Rev. Code §§ 1345.01 *et seq.* (Count XIII); violation of the Ohio Deceptive Trade Practices Act, Ohio Rev. Code §§ 4165.01 *et seq.* (Count XIV); violation of the Virginia Consumer Protection

[4] Pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d), and Federal Rule of Civil Procedure 23, Plaintiffs define the class as "all persons who purchased and/or leased certain vehicles equipped with transfer cases that have an identical multi-plate clutch system and are uniformly defective, and were designed, manufactured, distributed, warranted, marketed, and sold" by Defendant. (AC ¶ 1.)

Act, Va. Code Ann. §§ 59.1, *et seq.* (Count XV); violation of the Iowa Private Right of Action for Consumer Frauds Act, Iowa Code Ann. §§ 714H, *et seq.* (Count XVI); violation of the Georgia Fair Business Practices Act, O.C.G.A. §§ 10-1-390, *et seq.* (Count XVII); violation of the Georgia Uniform Deceptive Trade Practices Act, O.C.G.A. §§ 10-1-370, *et seq.* (Count XVIII); violation of the North Carolina Unfair Trade Practices Act, N.C. Gen. Stat. Ann. §§ 75-1, *et seq.* (Count XIX); violation of the Maryland Consumer Protection Act, Md. Com. Law Code Ann. §§ 13-101, *et seq.* (Count XX); and violations of the Washington Consumer Protection Act, Wash. Rev. Code §§ 19.86.010, *et seq.* (Count XXI).

Defendant moves to dismiss.[5] (D.E. 15 ("Mov. Br.")). The parties timely completed briefing. (D.E. 15, 24, 27.) This Court examines whether Plaintiffs' claims meet the Rule 12(b)(6) standard.[6]

## II. <u>LEGAL STANDARD</u>

### A. Rule 12(b)(6)

Upon deciding a motion to dismiss pursuant to Rule 12(b)(6) for failure to state a claim for which relief may be granted, federal courts "must accept as true all material allegations set forth in the complaint" and "construe those facts in favor of the nonmoving party." *Huertas v. Bayer US LLC*, 120 F.4th 1169, 1174 (3d Cir. 2024) (quoting *In re Schering Plough Corp.*

[5] It is not clear that Bayerische Motoren Werke AG ("BMW AG") has been served. According to the docket, no answer has been filed by BMW AG nor has BMW AG made an application for default. Only BMW NA moves to dismiss. (D.E. 15.) Given these circumstances, this Court approaches this Opinion only as against BMW NA. While Plaintiffs conflate the two entities in their Amended Complaint and brief, it is not appropriate for this Court to rule as to BMW AG who did not move to dismiss and who has not appeared in this matter.

[6] Defendant does not explicitly cite to Federal Rule of Civil Procedure 12(b)(6) in its Motion. However, based on the arguments, this Court deduces that Defendant seeks to dismiss the claims in Plaintiffs' Amended Complaint for failure to state a claim upon which relief may be granted.

*Intron/Temodar Consumer Class Action*, 678 F.3d 235, 243 (3d Cir. 2012)). This analysis is twofold. First, the court "must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions" and second, must determine if those facts are "sufficient to show that the plaintiff" has pleaded a "plausible claim for relief." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210–11 (3d Cir. 2009).

A claim for relief must be "plausible on its face" to survive a motion to dismiss. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). This plausibility standard does not necessitate a "probability requirement" but instead imposes "more than a sheer possibility that a defendant has acted unlawfully." *In re Schering Plough*, 678 F.3d at 243 (quoting *Iqbal*, 556 U.S. at 678). When evaluating a motion to dismiss, federal courts "may consider documents that are attached to or submitted with the complaint" or "matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, [and] items appearing in the record of the case." *Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006) (quoting 5B Charles A. Wright & Arthur R. Miller, FEDERAL PRACTICE & PROCEDURE § 1357 (4th ed. 2026)).

**B. Rule 9(b)**

Federal Rule of Civil Procedure 9(b) requires a heightened pleading standard for allegations of fraud. *In re Rockefeller Ctr. Props., Inc. Sec. Litig.*, 311 F.3d 198, 216 (3d Cir. 2002). Rule 9(b) imposes a party alleging fraud to "state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). Further, to comply with Rule 9(b), a plaintiff "must state the circumstances of the alleged fraud with sufficient particularity to place the defendant on notice of the 'precise misconduct with which [it is] charged.'" *DiMare v. MetLife*

*Ins. Co.*, 369 F. App'x 324, 329 (3d Cir. 2010) (quoting *Frederico v. Home Depot*, 507 F.3d 188, 200 (3d Cir. 2007)). A party asserting a claim for fraud must plead the "the who, what, when, where and how" of the events underlying the fraud claim. *In re Rockefeller Ctr. Props.*, 311 F.3d at 217–18.

## III. DISCUSSION

### A. Article III Standing

Article III of the Constitution provides federal courts the authority to adjudicate "cases" or "controversies" and requires that any plaintiff "demonstrate standing for each claim he seeks to press." *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006). At the pleading stage, to establish Article III standing, the litigant must "plausibly allege (i) an injury-in-fact (ii) that is fairly traceable to the conduct of the party sued, and (iii) that is judicially redressable." *Lutter v. JNESO*, 86 F.4th 111, 124 (3d Cir. 2023) (citing *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016)). In the context of a putative class action, standing "cannot be predicated on an injury which the plaintiff has not suffered, nor can it 'be acquired through the back door of a class action.'" *In re Franklin Mut. Funds Fee Litig.*, 388 F. Supp. 2d 451, 461 (D.N.J. 2005) (quoting *Allee v. Medrano*, 416 U.S. 802, 829 (1974)).

#### i. New Jersey Law Claims

Plaintiffs Dampilon, Grad, Finley, Kavanaugh, Gonzalez, Manemann, Goodell, Ridgeway, Sidhu, and Robbins (hereinafter, the "Non-New Jersey Plaintiffs") bring five causes of action under New Jersey law: breach of express warranty pursuant to N.J. Stat. Ann. § 12A:2-313 (Count I); breach of implied warranty pursuant to N.J. Stat. Ann. § 12A:2-314 (Count II); violation of the NJCFA (Count III); fraud by concealment and/or nondisclosure (Count IV); and unjust enrichment (Count V). (AC ¶¶ 214–96.) Plaintiffs argue that until a choice-of-law analysis is conducted,

Non-New Jersey Plaintiffs can properly bring the New Jersey law claims. (D.E. 24 ("Opp'n Br.") at 19–24.)

A choice-of-law analysis is not necessary at this juncture because the parties do not dispute that New Jersey law applies to Counts I through V but rather dispute whether Non-New Jersey Plaintiffs have standing to bring them. (*See* Mov. Br. at 22–23; Opp'n Br. at 21–22); *UBI Telecom Inc. v. KDDI Am., Inc.*, No. 13-1643, 2014 WL 2965705, at *9 (D.N.J. June 30, 2014) ("When the parties agree upon which state's law applies, however, the Court need not conduct this choice-of-law inquiry.").

Non-New Jersey Plaintiffs cannot bring Counts I through V under New Jersey law. They all reside outside of New Jersey and do not plead any allegations that the basis of their injury, the Defect, occurred in New Jersey. (AC ¶¶ 33–34, 43–44, 52–53, 62–63, 72–73, 81–82, 90–91, 100–01, 109–10, 118–19.) As such, the Non-New Jersey Plaintiffs do not have standing to bring claims under New Jersey law, a state where they "do[] not reside, or in which [they] suffered no injury." *McGuire v. BMW of N. Am., LLC*, No. 13-7356, 2014 WL 2566132, at *6 (D.N.J. June 6, 2014) (dismissing out-of-state breach of warranty claims for lack of standing); *Sittol v. AvalonBay Cmtys., Inc.*, No. 25-2124, 2025 WL 3041823, at *7 (D.N.J. Oct. 31, 2025) (dismissing non-New Jersey fraud, statutory consumer protection, and unjust enrichment claims for lack of standing) ("Named plaintiffs who incur injuries under the laws of their respective states cannot assert Article III standing to pursue separate, distinct state-law claims under the laws of other states where they suffered no alleged injury.").

It is not enough that the Non-New Jersey Plaintiffs' only connection to New Jersey is that BMW NA is headquartered here. *Nirmul v. BMW of N. Am., LLC*, No. 10-5586, 2011 WL 5195801, at *5 (D.N.J. Oct. 31, 2011) (holding out-of-state plaintiffs were "not entitled to sue

under NJCFA because the transactions . . . regarding their vehicles bear no relationship to New Jersey except for the fact that BMW is headquartered in New Jersey"); *Yagudayev v. BMW of N. Am., LLC*, No. 20-897, 2020 WL 6689799, at *7 (D.N.J. Nov. 13, 2020) (dismissing consumer fraud claim where only connection to New Jersey "is the location of Defendant [BMW NA's] headquarters"); *Rose v. Ferrari N. Am., Inc.*, No. 21-20772, 2024 WL 1209185, at *6 (D.N.J. Mar. 20, 2024) ("Plaintiff['s] NJCFA claim bears no relationship to New Jersey other than Ferrari North America's New Jersey headquarters [and thus] cannot assert a claim pursuant to the NJCFA."). Given the foregoing, the Non-New Jersey Plaintiffs lack any causal relation to the state. Counts I through V brought by Plaintiffs Dampilon, Grad, Finley, Kavanaugh, Gonzalez, Manemann, Goodell, Ridgeway, Sidhu, and Robbins pursuant to New Jersey law are hereby dismissed.

**ii. North Carolina Law Claims**

Plaintiff Ridgeway brings Count XIX in violation of the North Carolina Unfair Trade Practices Act, N.C. Gen. Stat. Ann. §§ 75-1, *et seq.*, on behalf of herself and others in the state class. (AC ¶¶ 514–29.) She also brings Counts IV and V under North Carolina law. (*Id.* ¶¶ 278, 291.) Plaintiff Ridgeway resides in South Carolina, and while she purchased her vehicle in North Carolina, the Amended Complaint does not specify in which state she discovered and experienced the alleged Defect. (*Id.* ¶¶ 100–01, 106.) Without more, Plaintiff Ridgeway's allegations are insufficient to demonstrate her causal relation to North Carolina. *Daimler*, 547 U.S. at 352 ("[A] plaintiff must demonstrate standing for each claim he seeks to press."); *see Sittol*, 2025 WL 3041823, at *8 (dismissing out-of-state claims for lack of standing where the "Complaint does not allege Plaintiff was personally injured under the laws of states where he never resided or rented"). Counts IV, V, and XIX as brought by Plaintiff Ridgeway under North Carolina law are hereby dismissed.

### iii. Vehicle Class Standing

Defendant also contends that Plaintiffs lack Article III standing over claims for vehicles they did not purchase, lease, or use. (Mov. Br. at 20–22.) A plaintiff has standing for a claim concerning a product he or she personally purchased or used. *David v. Volkswagen Grp. of Am., Inc.*, No. 17-11301, 2018 WL 1960447, at *3 (D.N.J. Apr. 26, 2018) (dismissing plaintiff's claims pertaining to Volkswagen models or model years he did not purchase or use); *Green v. Green Mountain Coffee Roasters, Inc.*, 279 F.R.D. 275, 280 (D.N.J. 2011) (holding named class plaintiff could only represent class members in consumer fraud class action whose Keurig model the plaintiff had purchased or used); *Semeran v. Blackberry Corp.*, No. 15-750, 2016 WL 406339, at *3 (D.N.J. Feb. 2, 2016) (holding named class plaintiff could only represent class members in consumer fraud class action whose BlackBerry smartphone model plaintiff had purchased or used).

Plaintiffs cite *Kavon v. BMW of North America*, 605 F. Supp. 3d 622, 630–31 (D.N.J. 2022). *Kavon* held that plaintiffs could bring claims pertaining to BMW models they did not personally purchase or use. *Kavon*, 605 F. Supp. 3d at 630. *Kavon* applied *Haas v. Pittsburgh National Bank*, 526 F.2d 1083 (3d Cir. 1975), a Third Circuit decision holding that a plaintiff, a cardholder with Mellon Bank who lacked standing to bring a statutory claim, could represent the Mellon Bank cardholder class because the plaintiff's other claims that had standing were "closely related to the commercial transactions claim on which she lack[ed] standing." *Haas*, 526 F.2d at 1088–89.

*Kavon* is not applicable here. The holding in *Kavon* relied on a widespread recall of hybrid electric BMW models that all had the same defective hybrid battery. *Kavon*, 605 F. Supp. 3d at 628. In this matter, no similar widespread recall exists. In support of any "closely related" Defect, Plaintiffs plead only one allegation "upon information and belief." (AC ¶ 3.) This sole allegation

is insufficient to show a uniform defect among Plaintiffs' vehicles for purposes of standing. *Reno v. Nationwide Credit, Inc.*, No. 20-17538, 2021 WL 4398753, at *4 (D.N.J. Sept. 27, 2021) (allegations upon information and belief are permitted "so long as there are no 'boilerplate and conclusory allegations' and 'plaintiffs accompany their legal theory with factual allegations that make their theoretically viable claim plausible'" (quoting *McDermott v. Clondalkin Grp., Inc.*, 649 F. App'x 263, 268 (3d Cir. 2016))).

This Court will only consider Plaintiffs' allegations pertaining to the vehicles owned or leased by Plaintiffs themselves, which are the 2019–2022 BMW X5 models (hereinafter, the "Class Vehicles"). Claims for other BMW models and model years in the Amended Complaint are hereby dismissed.

**B. Breach of Express Warranty (Counts I and X)**

This Court addresses Count I, breach of express warranty, as brought by Plaintiff Sangenito, the sole Plaintiff with standing. This Court also considers Count X, Plaintiff Dampilon's breach of express warranty claim brought under California law.

**i. Type of Defect Alleged**

Plaintiffs Sangenito and Dampilon's claims for breach of express warranty are premised on the Limited Warranty, in which Defendant warrants against "defects in materials or workmanship" for four years or 50,000 miles, whichever occurs first. (AC ¶ 225; D.E. 15-4, Ex. A at 6, D.E. 15-5, Ex. B at 6, D.E. 15-6, Ex. C. at 6, D.E. 15-7, Ex. D at 2.) The parties dispute whether the Defect is one in design or one in materials or workmanship and thus whether it falls within the scope of BMW NA's Limited Warranty. Defendant claims that Plaintiffs have solely alleged a defect in design, which is not covered by the Limited Warranty. (Mov. Br. at 43–45.)

Plaintiffs assert that they pleaded a defect in design, materials, and workmanship, and therefore the Limited Warranty applies. (Opp'n Br. at 43–45.)

The Third Circuit in *Coba v. Ford Motor Co.* found that a warranty covering "materials or workmanship" did not cover design defects under New Jersey law. 932 F.3d 114, 123 (3d Cir. 2019). In differentiating between the three types of defects, the Third Circuit defined a materials defect as "a failing in the quality of the actual substances used to make a product," a workmanship defect as "a deficiency in the execution of a product's assembly or construction," and a design defect as "a flaw inherent in the product's intended operation and construction." *Id.* at 121. The terms "'materials' and 'workmanship' . . . carr[ied] their plain meaning" which "[did] not extend to design defects." *Id.* at 123. Ultimately, the Third Circuit found that plaintiff's allegations amounted to a design defect because the basis of the defect theory was vehicle fuel tank coatings that were susceptible to delamination rather than a "low-quality supply" of coatings or a "problem in the process for applying" the coatings to the vehicles. *Id.* at 123–24.

Here, Plaintiffs' Amended Complaint alleges a design Defect theory whereby the Class Vehicles' transfer case resulted in the "clutch system to improperly transmit torque between the front and rear wheels." (AC ¶¶ 1, 3–4, 152–57, 155 (Class Vehicles contain transfer cases with an "identical multi-plate clutch system" and which are "uniformly defective"); *id.* ¶ 232 (alleging the "clutch design is inherently flawed" and "defective"); *id.* ¶ 234 ("[A]bsent a design change to the clutch system of the Class Vehicles, the Transfer Case Defect will continue to manifest in the Class Vehicles even if the transfer case is replaced."); *id.* ¶ 351 ("[T]he Class Vehicles are inherently defective in that they contain a transfer case prone to failure.")). The Amended Complaint is devoid of allegations that the transfer cases in the Class Vehicles were improperly assembled or constructed, or that the transfer cases' substances were of low or subpar quality. Plaintiffs' brief

reference to a "defect in design, materials, and workmanship" in a threadbare allegation is insufficient to plead a materials or workmanship defect. (*Id.* ¶ 238.) Altogether, Plaintiffs allege "a flaw inherent in the . . . intended operation and construction" of the transfer cases that can only be construed as a design defect. *See Coba*, 932 F.3d at 121. Thus, Plaintiffs' express warranty claims fall outside the scope of the Limited Warranty.

**ii. Defects Arising After the Four-Year Limited Warranty Period**

Defendant also contends that Plaintiffs' express warranty claims are outside the Limited Warranty period. (Mov. Br. at 40–43.) Plaintiff Sangenito's claim falls outside the four-year/50,000-mile term prescribed by the Limited Warranty. Plaintiff Sangenito purchased his vehicle in June 2020 and discovered its Defect in July 2025, one year after the expiration of the Limited Warranty period and at which point his vehicle had about 57,000 miles. (*Id.* ¶¶ 21, 26, 225.)

Plaintiffs assert that there is an additional warranty for pre-owned vehicles, the BMW NA Certified Pre-Owned Limited Warranty (hereinafter, the "Pre-Owned Limited Warranty"), that "runs for one year and unlimited miles." (AC ¶ 227; Opp'n Br. at 41–43.) Plaintiff Dampilon states that he purchased a preowned 2019 BMW X5 in 2022 and discovered the alleged Defect three years later in "the summer of 2025." (*Id.* ¶¶ 34, 39.) The Pre-Owned Limited Warranty is not in the record, and this Court cannot form an analysis as to its applicability without it. As to the 2019 Limited Warranty, coverage began "on the date of first retail sale" of Plaintiff Dampilon's preowned vehicle, but that date is not set forth by Plaintiffs. (*See id.* ¶¶ 33–42; D.E. 15-4, Ex. A at 6.) Notwithstanding Plaintiffs' lacking factual allegations, the Limited Warranty does not cover design defects, which is the only defect pleaded by Plaintiffs Dampilon and Sangenito here. Given the foregoing, Counts I and X are dismissed.

### C. Breach of Implied Warranty (Counts II and IX)

This Court addresses Count II, breach of implied warranty under New Jersey law, as brought by Plaintiff Sangenito, the sole Plaintiff with standing. This Court also considers Count IX, Plaintiff Dampilon's breach of implied warranty claim brought under California law.

Defendant asserts that Plaintiffs' claims for breach of implied warranty are foreclosed by the expiration of the Limited Warranty. (Mov. Br. at 46–47.) The Limited Warranty for the 2019–2021 BMW X5 models clearly states that the duration of any implied warranty is limited to the duration of the express warranty. (D.E. 15-4, Ex. A at 7; D.E. 15-5, Ex. B at 7; D.E. 15-6, Ex. C at 7.) While Exhibit D, the excerpted 2022 Limited Warranty, does not provide such language, New Jersey and California law accordingly support this Court's conclusion that all of Plaintiffs' claims for breach of implied warranty are coextensive with their claims for breach of express warranty. N.J. Stat. Ann. § 12A:2-317 (stating that "[w]arranties whether express or implied shall be construed as consistent with each other and as cumulative" so long as their construction is reasonable); Cal. Civ. Code § 1791.1(c) ("The duration of the implied warranty of merchantability . . . shall be coextensive in duration with an express warranty which accompanies the consumer goods, provided the duration of the express warranty is reasonable[.]"); *Ludwig v. FCA US LLC*, 795 F. Supp. 3d 525, 543–44 (D.N.J. 2025) (explaining implied warranties "expire upon expiration of any express warranties for that same product" (quoting *Paolucci v. FCA US LLC*, No. 23-2982, 2024 WL 3355390, at *3 (D.N.J. July 9, 2024))); *Tietsworth Sears, Roebuck & Co.*, No. 09-00288, 2009 WL 1363548, at *3 (N.D. Cal. May 14, 2009) ("The duration of the implied warranty of merchantability [under Cal. Civ. Code § 1791.1] is coextensive with an express warranty[.]").

Plaintiffs also assert that the Limited Warranty and Pre-Owned Limited Warranty are unconscionable due to their "time and mileage limits" and because of Defendant's alleged

knowledge of the Defect before Plaintiffs purchased their respective Class Vehicles. (Opp'n Br. at 41–43.) However, time or mileage limits on their face are not unconscionable. *T.J. McDermott Transp. Co. v. Cummins, Inc.*, No. 14-4209, 2015 WL 1119475, at *8–9 (D.N.J. Mar. 11, 2015) (noting that 1-year/100,000 mile or 2-year/250,000-mile warranties are not unconscionable per se); *In re Philips/Magnavox Television Litig.*, No. 09-3072, 2010 WL 3522787, at *5 (D.N.J. Sept. 1, 2010) ("There are no allegations that [company] warranties are unfair compared to other warranties in the . . . industry, let alone rise to the substantial level of 'conscious shocking.'"); *Bros. v. Hewlett-Packard Co.*, No. 06-02254, 2006 WL 3093685, at *8 (N.D. Cal. Oct. 31, 2006) (holding a warranty's "time limitation, by itself, is not unconscionable").

Further, Defendant's alleged knowledge of the Defect "is an insufficient basis on which to find the warranty limit unconscionable." *Nelson v. Nissan N. Am., Inc.*, 894 F. Supp. 2d 558, 566 (D.N.J. 2012); *Sonneveldt v. Mazda Motor of Am., Inc.*, No. 19-01298, 2021 WL 62502, at *13 (C.D. Cal. Jan. 4, 2021) ("[K]nowledge does not render the [warranty] substantively unconscionable."). Nor have Plaintiffs pleaded allegations of manipulation sufficient to show unconscionability to survive a motion to dismiss. *Cf. McCoy v. Samsung Elecs. Am., Inc.*, No. 21-19470, 2024 WL 3717299, at *3 (D.N.J. Aug. 8, 2024) (finding unconscionability because plaintiffs pleaded Samsung's knowledge of defect and "manipulation of the warranty terms to avoid the cost thereof").

Lastly, Plaintiffs argue the Defect renders the Class Vehicles unmerchantable. (Opp'n Br. at 46–48.) Defendant asserts that Plaintiffs do not adequately plead unmerchantability. (Mov. Br. at 47–49.) The law in this District is clear that Plaintiffs "may not recover for breach of the implied warranty of merchantability" when they "have driven their cars without problems for years." *Sheris v. Nissan N. Am. Inc.*, No. 07-2516, 2008 WL 2354908, at *6 (D.N.J. June 3, 2008). Here,

both Plaintiffs Sangenito and Dampilon drove their vehicles for three to five years before they encountered the implications of any Defect. (AC ¶¶ 21, 26, 34, 39.) Counts II and IX are hereby dismissed.

**D. Fraud Claims (Counts III, IV, VI–VIII, XI–XVIII, XX–XXI)**

Plaintiffs bring fifteen fraud-based claims premised on Defendant BMW NA's failure to disclose the Defect. Plaintiffs assert fraud by concealment/nondisclosure on behalf of their respective state classes. (AC ¶¶ 276–88.) Plaintiffs also bring claims for violations of state statutory consumer protection laws on behalf of each state class, which are New Jersey, California, Illinois, Ohio, Virginia, Iowa, Georgia, Maryland, and Washington. (*Id.* ¶¶ 257–75, 297–330, 355–512, 531–71.)

Claims sounding in fraud must comport with the heightened pleading standard of Rule 9(b). *Ludwig*, 795 F. Supp. 3d at 541. A party alleging fraud must, in its factual allegations, plead "the who, what, when, where and how of the events at issue." *Armstrong v. BMW of N. Am., LLC*, No. 23-3046, 2025 WL 957889, at *2 (D.N.J. Mar. 31, 2025) (quoting *U.S. ex rel. Moore & Co., P.A. v. Majestic Blue Fisheries, LLC*, 812 F.3d 294, 307 (3d Cir. 2016)). To satisfy Rule 9(b)'s particularity standard, "the plaintiff must plead or allege the date, time and place of the alleged fraud or otherwise inject precision or some measure of substantiation into a fraud allegation." *Feingold v. Graff*, 516 F. App'x 223, 226 (3d Cir. 2013) (quoting *Frederico v. Home Depot*, 507 F.3d 188, 200 (3d Cir. 2007)).

Defendant raises multiple grounds to dismiss the fraud-based claims: that they are not pleaded with the requisite particularity required by Rule 9(b) and that Plaintiffs fail to plead various elements of fraud, such as knowledge, misrepresentation or omission, and reliance. (Mov. Br. at 25–40.) In their briefing for the fraud claims, the parties address the common law fraud and

consumer protection claims together. The parties largely do not differentiate between the laws of the multiple states underlying their fraud-based claims. Therefore, this Court does the same while drawing material distinctions among state laws where necessary. *See Ludwig*, 795 F. Supp. 3d at 551–52 (concluding differences in state laws were not relevant where the parties did not distinguish between those multiple state laws underlying their fraud common law and consumer protection claims); *McCoy v. Samsung Elecs. Am., Inc.*, No. 21-19470, 2023 WL 6140641, at *7 n.11 (D.N.J. Sept. 20, 2023) (acknowledging the plaintiffs' fraudulent omission and violation of state consumer protection statutes claims both sounded in fraud and endeavoring to draw distinctions where necessary).

Under New Jersey law, to plead a fraudulent concealment/nondisclosure claim, plaintiff must allege "(1) a material misrepresentation of a presently existing or past fact; (2) knowledge or belief by the defendant of its falsity; (3) an intention that the other person rely on it; (4) a reasonable reliance thereon by the other person; and (5) resulting damages." *Arcand v. Brother Int'l Corp.*, 673 F. Supp. 2d 282, 305 (D.N.J. 2009) (quoting *Gennari v. Weichert Co. Realtors*, 691 A.2d 350, 367 (N.J. 1997)). The other relevant state laws require the same elements for fraudulent concealment, and many require the additional element of a duty to disclose.[7]

[7] *E.g.*, *Avila v. Ford Motor Co.*, 821 F. Supp. 3d 1113, 1118 (N.D. Cal. 2026) (CA fraudulent concealment, which includes a "duty to disclose"); *Amin v. Mercedes-Benz USA, LLC*, 301 F. Supp. 3d 1277, 1296 (N.D. Ga. 2018) (GA fraudulent concealment where duty to disclose exists upon "confidential relations" between parties); *Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 569, 571 (7th Cir. 2012) (IL fraudulent concealment, which includes "duty to disclose"); *Doe v. Hartz*, 52 F. Supp. 2d 1027, 1055–56 (N.D. Iowa 1999) (IA fraudulent concealment, which includes "duty of disclosure"); *Baltimore Flips Israel 2020 LLC v. Yosef*, 769 F. Supp. 3d 370, 400, 402 (D. Md. 2025) (MD fraudulent concealment, which includes duty element); *Stanich v. Travelers Indem. Co.*, 259 F.R.D. 294, 300 (N.D. Ohio 2009) (OH fraudulent concealment which includes a "duty to disclose"); *What Hurts, LLC v. Volvo Penta of the Ams., LLC*, 710 F. Supp. 3d 502, 518–19 (E.D. Va. 2024) (VA fraudulent concealment which includes a "duty to disclose"); *In re Pac. Mkt. Int'l, LLC, Stanley Tumbler Litig.*, 764 F. Supp. 3d 1026, 1046 (W.D. Wash. 2025) (noting that fraudulent concealment can be shown by pleading affirmative duty to disclose a material fact).

Plaintiffs also base their fraud claims on violations of state consumer protection statutes. As one example, under New Jersey law, "[t]o state a *prima facie* case under the [NJCFA], a plaintiff must demonstrate three elements: (1) unlawful conduct by the defendant," as defined by N.J. Stat. Ann. § 56:8-2, as well as "(2) an ascertainable loss by the plaintiff; and (3) a causal connection between the defendant's unlawful conduct and the plaintiff's ascertainable loss." *Mickens v. Ford Motor Co.*, 900 F. Supp. 2d 427, 436 (D.N.J. 2012) (quoting *Payan v. GreenPoint Mortg. Funding, Inc.*, 681 F. Supp. 2d 564, 572 (D.N.J. 2010)). The additional relevant state statutory schemes require essentially the same elements.[8] Under the NJCFA, "when the alleged consumer fraud consists of an omission, a plaintiff must show the defendant acted with knowledge, thereby making intent an essential element of the fraud." *Szczubelek v. Cendant Mortg. Corp.*, 215 F.R.D. 107, 125 (D.N.J. 2003).

**i. Knowledge**

Plaintiffs claim they sufficiently allege that Defendant had knowledge of the Defect based on: the "process of designing, manufacturing, engineering, and testing" the identified vehicles, (*id.* ¶¶ 166–69); complaints made to the NHTSA, to BMW NA by class members, or on public online forums, (*id.* ¶¶ 170–74, 183–85); requests to replace vehicle transfer cases, (*id.* ¶¶ 180–82); and BMW NA's service industry bulletin, (*id.* ¶¶ 175–79). (*See* Opp'n Br. at 30–37.)

---

[8] *E.g.*, *James v. Chocmod USA Inc.*, 773 F. Supp. 3d 945, 955 (E.D. Cal. 2025) (CA CLRA, FAL, and UCL); *Saika v. Ocwen Loan Servicing, LLC*, 357 F. Supp. 3d 704, 714 (N.D. Ill. 2018) (ICFA); *Tri-Plex Tech. Servs., Ltd. v. Jon-Don, LLC*, 241 N.E.3d 454, 459–62 (OH DTPA and CSPA); *In re Cap. One 360 Sav. Acct. Int. Rate Litig.*, 779 F. Supp. 3d 666, 725–26 (E.D. Va. 2024) (VCPA); *Becirovic v. Malic*, 18 N.W.3d 737, at *9–10 (Iowa Ct. App. 2024) (IPRACFA); *McClure v. Toyota Motor Corp.*, 759 F. Supp. 3d 1333, 1359–60 (N.D. Ga. 2024) (GA FBPA); *Energy Four, Inc. v. Dornier Med. Sys., Inc.*, 765 F. Supp. 724, 730–31 (N.D. Ga. 1991) (GA UDTPA); *Bryant v. Koppers, Inc.*, 627 F. Supp. 3d 466, 477 (D. Md. 2022) (MCPA); *Zaimi v. Costco Wholesale Corp.*, 836 F. Supp. 3d 1083, 1093 (W.D. Wash. 2026) (WA CPA).

Plaintiffs' allegations pertaining to pre-testing are broad and conclusory. (AC ¶¶ 166–69.) For example, the Amended Complaint does not allege how BMW NA would have knowledge of a Defect resulting from pre-sale testing. (*See id.*) Nor do Plaintiffs allege that BMW NA, the distributor, conducted any pre-sale tests. (*Id.* ¶ 169 (alleging "Plaintiffs expect discovery to reveal whether BMW performed these tests" and "[a] reasonably prudent vehicle manufacturer should have conducted the above tests"); (*id.* ¶ 167 (alleging the test "would have revealed to BMW that the transfer cases were defective and would fail when exposed to normal road conditions").) These allegations do not amount to distributor knowledge despite Plaintiff's contention that courts in this District "routinely find" that pre-sale knowledge of a defect from a distributor establishes knowledge. (Opp'n Br. at 33); *see Armstrong*, 2025 WL 957889, at *4 (holding that plaintiffs' pre-testing allegations that BMW "knew or should have known" of the relevant defect "[t]hrough their quality control measures" were not "concrete statements inferring BMW implemented testing" but were instead "excessively broad" and "conclusory").

The case law cited by Plaintiffs is not analogous to the facts in the record before this Court. In *Afzal v. BMW of North America, LLC*, like here, plaintiffs "conflate[d] BMW NA" with its parent manufacturer. (*See* AC ¶¶ 277–88; 297–330, 355–512, 531–71.) However, in reviewing the totality of plaintiffs' allegations, the Court held it was sufficient to infer a finding of knowledge to the distributor where the second amended complaint pleaded communication by the manufacturer to the distributor "concerning virtually all aspects of the BMW products it distributes within the United States." *Afzal v. BMW of N. Am., LLC*, No. 15-8009, 2017 WL 3207232, at *6 (D.N.J. July 27, 2017). However, unlike *Afzal*, Plaintiffs do not allege manufacturer BMW AG had any communication with distributor Defendant, let alone communication "concerning virtually all aspects of the BMW products" distributed in the United States. *Id.*

Similarly, Plaintiff's reliance on *Ponzio v. Mercedes-Benz USA, LLC* is misplaced. 447 F. Supp. 3d 194, 229, 231 (D.N.J. 2020). There, the Court held that distributor Mercedes had knowledge of a defect from pre-sale testing because a preceding defect investigation prompted the issuance of a bulletin, which "address[ed] the exact problem" with the paint underlying the defect. *Ponzio*, 447 F. Supp. 3d at 229, 231. Further, the complaint in *Ponzio* specifically alleged that "Mercedes engaged in at least four years of development and testing" prior to using the paint at issue. *Id.* at 228. These allegations were viewed "in conjunction" with additional pre-sale averments to infer the distributor's knowledge. *Id.* at 229. No such defect investigation or investigation-related technical service bulletin exists here, and Plaintiffs do not allege that any testing was conducted by BMW NA. (*See supra*; AC ¶¶ 166–69.)

Here, Plaintiffs do not allege that BMW NA monitored the NHTSA public database or that NHTSA alerted BMW NA of any posted complaint. *Schecter v. Hyundai Motor Am.*, No. 18-13634, 2019 WL 3416902, at *6 (D.N.J. July 29, 2019) (holding plaintiff failed to allege knowledge based on 29 anonymous consumer complaints posted on NHTSA's website because plaintiff did not allege Hyundai monitored or tracked NHTSA's website or that NHTSA informed Hyundai about the complaints). Plaintiffs' assertions that "[f]ederal law requires automakers like BMW to be in close contact with NHTSA regarding potential auto defects" and that "automakers should and do monitor NHTSA databases for consumer complaints," are inadequate. (*See* AC ¶¶ 171–74.) Allegations that there were a "large number" of "class member complaints" that were "made directly to BMW" are not supported, as the Amended Complaint only references *two* NHTSA complaints, both of which are anonymous, and it further alleges that the "full universe of complaints . . . [is] presently in the exclusive custody and control of BMW and is not yet available to Plaintiffs." (*Id.* ¶¶ 183–84.) Further, all NHTSA complaints referenced in the Amended

Complaint do not clearly specify which vehicle models and years they pertain to and thus whether they were even posted by Class Vehicle owners. (AC ¶¶ 174, 184); *Schecter*, 2019 WL 3416902, at *7 (finding it pertinent for lack of knowledge holding that NHTSA complaints did not specify which vehicle models were at issue, and if they did, they were models plaintiff did not lease). Altogether, these allegations are insufficient to infer knowledge on behalf of Defendant.

The same concerns exist regarding Plaintiffs' allegations about complaints made on public online forums. The public forum complaints set forth in the Amended Complaint do not identify customer names and are, in effect, anonymous grievances posted on the third-party websites Reddit.com and BimmerPost.com.[9] (*Id.* ¶ 185.) The four complaints from these websites are dated between June 5, 2024, and September 25, 2025, thus Plaintiffs "cannot rely on events which occurred" *after* their lease or purchase "to establish that Defendant[] [was] aware of the alleged defect during that relevant timeframe." *Schecter*, 2019 WL 3416902, at *6.[10] Absent more detailed allegations, "consumer complaints on third-party websites are insufficient to support a manufacturer's knowledge of an alleged defect." *Id.* at *7. They also do not support a distributor's knowledge at all.

Third, Plaintiffs aver that the Service Industry Bulletin (hereinafter, the "SIB") and subsequent revisions thereto implicate knowledge to BMW NA because they pertain to the Class Vehicles. (Opp'n Br. at 30–32.) The SIB notified service technicians of the "jerking or shuddering

[9] From what this Court can tell, BimmerPost.com is a non-BMW affiliated website that is dedicated to BMW news, and which allows users to post comments in response to BMW-related forums and/or blogs.

[10] Plaintiff Finley alleges he purchased his 2020 BMW X5 "in 2024" but does not allege more detail as to the exact date of purchase. (AC ¶ 53.) Without sufficient detail, this Court cannot properly impute knowledge to Defendant of Plaintiff Finley's alleged Defect based on the four anonymous complaints posted on Reddit and BimmerPost between June 5, 2024, and September 25, 2025.

during . . . [c]ornering or accelerating from low speeds [or] [d]riving with low to medium loads" by certain BMW vehicles. (AC ¶ 175.) Defendant argues otherwise and contends that the SIB discredits any knowledge by BMW NA of the Defect because the SIB states that the cause of the jerking or shuddering could be due to "unevenly worn or incorrect fitment tires being installed on the vehicle." (*Id.*) The original SIB published on February 20, 2020, does not cover all Class Vehicles. (AC ¶ 10.) Plaintiffs Manemann, Sidhu, and Robbins leased or purchased their vehicles prior to the publication of the SIB. (*Id.* ¶¶ 73, 110, 119.) Plaintiffs allege subsequent revisions contained "the same operative language" as the SIB, however they do not explain at which point those revised SIBs applied to Plaintiffs Manemann, Sidhu, and Robbins' vehicles or what those revised SIBs specifically say, and they are not on the record before this Court. (AC ¶ 178; Opp'n Br. at 30–31); *Schecter*, 2019 WL 3416902, at *7 (noting bulletin's information was not provided in the complaint "such that the Court can infer knowledge"). In sum, the issuance of the original SIB, though it applies to some Plaintiffs' Class Vehicles, is "not sufficient to demonstrate knowledge on [its] own." *See Powell v. Subaru of Am., Inc.*, 502 F. Supp. 3d 856, 888–89 (D.N.J. 2020).

Finally, Defendant asserts that the requests to replace vehicle transfer cases, pleaded "upon information and belief," are without a factual basis and do not prove that BMW NA had knowledge of the Defect. (Mov. Br. at 34; Opp'n Br. at 35; AC ¶¶ 180–82.) In the Amended Complaint, Plaintiffs allege upon information and belief that Defendant "knew or should have known" about the Defect because of a "higher than expected number of replacement transfer cases and replacement transfer case fluid" and a "high volume of demand for replacement parts" and therefore "BMW would have detailed and accurate data regarding the number and frequency of replacement part orders, including replacement transfer cases and transfer case fluid." (AC ¶¶

180–82.) Plaintiffs' allegations are conclusory and do not provide the "who, what, when, where, and how" of their claims. *MZL Cap. Holdings, Inc v. TD Bank, N.A.*, 734 F. App'x 101, 104 (3d Cir. 2018) ("When pleadings of fraudulent conduct are based on the plaintiff's information and belief, the plaintiff 'must also describe the sources of information with particularity, providing the who, what, when, where and how of the sources, as well as the who, what, when, where and how of the information those sources convey.'") (quoting *Institutional Invs. Grp. v. Avaya, Inc.*, 564 F.3d 242, 253 (3d Cir. 2009))).

In construing the totality of the allegations in Plaintiffs' favor, this Court finds they are insufficient to infer knowledge by BMW NA of any Defect. *See Armstrong*, 2025 WL 957889, at *8 (holding courts should construe totality of allegations when assessing claim of pre-sale knowledge). The knowledge requirement pervades the fraudulent concealment claims and each of the consumer statutes asserted in the Amended Complaint. Thus, Plaintiffs' failure to plead factual allegations demonstrating that Defendant had knowledge of the Defect—as discussed above—is detrimental to their fraud-based claims.

Counts III, IV, VI–VIII, XI–XVIII, and XX–XXI are hereby dismissed.

**E. Unjust Enrichment (Count V)**

Plaintiffs seek restitution and/or damages for their unjust enrichment claims, contending that they and their fellow class members "conferred a benefit on BMW of which BMW had knowledge, since BMW was aware of the defective nature of its Class Vehicles' transfer cases and the resultant transfer case failure, but failed to disclose this knowledge and misled Plaintiffs and the Class Members regarding the nature and quality of the subject Class Vehicles while profiting from this deception." (AC ¶ 294.)

When the parties agree as to which state's law applies to a claim, this Court need not conduct a choice-of-law inquiry. *UBI Telecom*, 2014 WL 2965705, at *9. Plaintiffs allege in their unjust enrichment claim that "there are no true conflicts among various states' laws of unjust enrichment with respect to this factual context" as it pertains to the various state classes. (AC ¶ 290.) In their briefs, the parties exclusively cite New Jersey law when discussing unjust enrichment. (Mov. Br. at 49–50; Opp'n Br. at 48–50.) Thus, the parties do not dispute that the law of the forum state, New Jersey, applies to Count V. *See Hale v. Stryker Orthopaedics*, No. 08-3367, 2009 WL 321579, at *9 (D.N.J. Feb. 9, 2009) ("Here, neither Plaintiffs nor Defendants have raised a choice of law issue. As such, the Court will apply the law of the forum state, New Jersey, in weighing Defendants' motion to dismiss the unjust enrichment claim.").

To state a claim for unjust enrichment under New Jersey law, like a claim under Iowa and Maryland law, a plaintiff must allege "(1) at plaintiff's expense (2) defendant received benefit (3) under circumstances that would make it unjust for defendant to retain benefit without paying for it." *Snyder v. Farnam Companies, Inc.*, 792 F. Supp. 2d 712, 723–24 (D.N.J. 2011).[11] The second element has been construed by New Jersey courts to impose a requirement that "plaintiff allege a sufficiently direct relationship with the defendant to support the claim." *Id.* at 724. California, Illinois, Virginia, Ohio, Georgia and Washington require those same three elements and that a plaintiff plead the absence of an adequate remedy at law if asserting an unjust enrichment claim.[12]

---

[11] *Meardon v. Reg.*, 994 F.3d 927, 936 (8th Cir. 2021) (IA unjust enrichment); *Lacks v. Ultragenyx Pharm., Inc.*, 734 F. Supp. 3d 397, 408 (D. Md. 2024) (MD unjust enrichment).

[12] *Collins v. eMachines, Inc.*, 134 Cal. Rptr. 3d 588, 596–97 (Cal. Ct. App. 2011) (finding unjust enrichment claim premised on fraud unnecessary pursuant to the general principle of equity that "equitable relief (such as restitution) will not be given when the plaintiff's remedies at law are adequate" since plaintiffs' remedies at law under the CLRA, UCL, and common law fraud were adequate); *Nesby v. Country Mut. Ins. Co.*, 805 N.E.2d 241, 243 (Ill. App. Ct. 2004) ("Because it is an equitable remedy, unjust enrichment is only available when there is no adequate remedy at

Here, Plaintiffs purchased their Class Vehicles from authorized BMW dealerships. (AC ¶¶ 21, 34, 44, 53, 63, 73, 82, 91, 101, 110, 119.) "In New Jersey, a benefit conferred upon a retailer not sharing in profits with the product manufacturer does not result in the manufacturer's unjust enrichment." *Alin v. Am. Honda Motor Co.*, No. 08-4825, 2010 WL 1372308, at *15 (D.N.J. Mar. 31, 2010). Plaintiffs do not adequately allege they purchased the Class Vehicles directly from BMW NA and continue to conflate BMW NA and BMW AG in Count V. (AC ¶¶ 290–96.) Plaintiffs also fail to allege a relationship between the BMW dealerships and BMW NA and how revenue to any BMW dealership unjustly enriched BMW NA. *See Ponzio v. Mercedes-Benz USA, LLC*, 447 F. Supp. 3d 194, 261 (D.N.J. 2020) (finding no direct relationship between plaintiffs and defendant distributor where plaintiffs purchased vehicles from Mercedes dealerships). Count V is dismissed because Plaintiffs fail to state a plausible claim for unjust enrichment.

**CONCLUSION**

For the reasons stated above, Defendant BMW NA's Motion to Dismiss the First Amended Complaint is **GRANTED WITHOUT PREJUDICE**. Plaintiffs shall have thirty (30) days to file an Amended Complaint. An appropriate order follows.

/s/ Susan D. Wigenton
**SUSAN D. WIGENTON, U.S.D.J.**

Orig: Clerk
cc: Parties
United States Magistrate Judge

---

law."); *R.M. Harrison Mech. Corp. v. Decker Indus., Inc.*, 75 Va. Cir. 404 (Va. Cir. Ct. 2008) ("For a claim of unjust enrichment to stand, the plaintiff must have no adequate remedy at law against the demurring defendant."); *Coventry Cts., LLC v. Cuyahoga Cnty.*, N.E.3d 373, 380 (Ohio Ct. App. 2023) ("Ohio law has consistently held that where there is an adequate remedy at law, an equitable remedy is improper."); *Elder v. Reliance Worldwide Corp.*, 563 F. Supp. 3d 1221, 1233 (N.D. Ga. 2021) (noting relief is only available for unjust enrichment where there is no other adequate remedy); *Orwick v. City of Seattle*, 692 P.2d 793, 796 (Wash. 1984) ("Equitable relief is available only if there is no adequate legal remedy.").